UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ENRIQUE JEVONS, Individually and On Behalf of All Others Similarly Situated,<br><br>                     Plaintiff,<br><br>                     v.<br><br>BOSTON SCIENTIFIC CORPORATION, MICHAEL F. MAHONEY, and DANIEL J. BRENNAN,<br><br>                     Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Enrique Jevons ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Boston Scientific Corporation ("Boston Scientific" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Boston Scientific

securities between April 24, 2019 and November 16, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Boston Scientific develops, manufactures, and markets medical devices for use in various interventional medical specialties worldwide. The Company's products include, among others, the LOTUS Edge Aortic Valve System, which is a Transcatheter Aortic Valve Replacement ("TAVR") product. Boston Scientific announced the U.S. Food and Drug Administration's ("FDA") approval for the LOTUS Edge Aortic Valve System in April 2019.

3. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the LOTUS Edge Aortic Valve System's product delivery system was dysfunctional and threatened the continued viability of the entire product line; (ii) as a result, the Company had materially overstated the continued commercial viability and profitability of the LOTUS Edge Aortic Valve System; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

4. On November 17, 2020, Boston Scientific announced a global recall of all unused inventory of the LOTUS Edge Aortic Valve System, citing "complexities associated with the product delivery system." Boston Scientific further announced that "[g]iven the additional time and investment required to develop and reintroduce an enhanced delivery system, the company has chosen to retire the entire LOTUS product platform immediately."

5. On this news, Boston Scientific's stock price fell $3.00 per share, or 7.89%, to close at $35.03 per share on November 17, 2020.

6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

9. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), as the alleged misstatements entered and the subsequent damages took place in this Judicial District.  Pursuant to Boston Scientific's most recent annual report on Form 10-K, as of January 31, 2020, there were a total of 1,396,195,349 shares of the Company's common stock outstanding.  Boston Scientific's common stock trades on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in Boston Scientific's common stock located within the U.S., some of whom undoubtedly reside in this Judicial District.

10. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

11. Plaintiff, as set forth in the attached Certification, acquired Boston Scientific securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

12. Defendant Boston Scientific is a Delaware corporation with principal executive offices located at 300 Boston Scientific Way, Marlborough, Massachusetts. The Company's common stock trades in an efficient market on the NYSE under the ticker symbol "BSX."

13. Defendant Michael F. Mahoney ("Mahoney") has served as Boston Scientific's President and Chief Executive Officer at all relevant times.

14. Defendant Daniel J. Brennan ("Brennan") has served as Boston Scientific's Executive Vice President and Chief Financial Officer at all relevant times.

15. Defendants Mahoney and Brennan are sometimes referred to herein as the "Individual Defendants."

16. The Individual Defendants possessed the power and authority to control the contents of Boston Scientific's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Boston Scientific's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected. Because of their positions with Boston Scientific, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

17. Boston Scientific and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

18. Boston Scientific develops, manufactures, and markets medical devices for use in various interventional medical specialties worldwide. The Company's products include, among others, the LOTUS Edge Aortic Valve System, which is a TAVR product. Boston Scientific announced the FDA's approval for the LOTUS Edge Aortic Valve System in April 2019.

### Materially False and Misleading Statements Issued During the Class Period

19. The Class Period begins on April 24, 2019. On April 23, 2019, post-market, Boston Scientific issued a press release announcing the FDA's approval for the LOTUS Edge Aortic Valve System (the "April 2019 Press Release"). That press release touted the LOTUS Edge Aortic Valve System's product delivery system and structure, representing, in relevant part, that the LOTUS Edge Aortic Valve System is "[d]elivered via a minimally-invasive procedure," which "is approved for patients with severe aortic stenosis who are considered at high risk for surgical valve replacement via open heart surgery"; that "[t]he LOTUS Edge valve system is the only FDA-approved aortic valve that gives physicians the option to reposition and completely recapture the valve once it has been fully deployed"; and that the product "also features a braided valve frame and an adaptive seal that minimizes paravalvular regurgitation or leaking (PVL) by conforming to the patient's native aortic valve."

20. The April 2019 Press Release also quoted Boston Scientific's executive vice president and global president of Interventional Cardiology, as well as the Company's executive vice president and global chief medical officer, who both likewise touted the LOTUS Edge Aortic

Valve System's product delivery system and structure, stating, respectively, that "[b]ringing the much-anticipated LOTUS Edge valve system to market allows us to provide patients who aren't good candidates for traditional surgery a safe and effective treatment alternative to restore proper function to their severely narrowed aortic valve," which "is a fundamental component of our expanding portfolio and demonstrates our continuing commitment to category leadership within the fast-growing Structural Heart treatment landscape"; and that Boston Scientific is "thrilled to offer physicians in the U.S. and Europe the clinical benefits of the LOTUS Edge valve system for the treatment of their high-risk patients with severe aortic stenosis," which "provides physicians a high level of control over the delivery and deployment of the device and offers surgical-like PVL results to help ensure the best patient outcomes."

21. On July 24, 2019, Boston Scientific issued a press release announcing its results for the second quarter of 2019, stating, in relevant part, that the Company "[c]ommenced controlled launch in the U.S. and Europe of the LOTUS Edge™ Aortic Valve System, a minimally invasive TAVR technology for patients with severe aortic stenosis considered to be at high risk for surgical valve replacement via open heart surgery."

22. On October 23, 2019, Boston Scientific issued a press release announcing its results for the third quarter of 2019, stating, in relevant part, that the Company "[p]resented at TCT [Transcatheter Cardiovascular Therapeutics] positive data for the LOTUS™ TAVR System, a mechanically-expanding valve, including a three-year analysis from the REPRISE III study demonstrating significant, sustained improvement in functional and health status following LOTUS valve implantation versus CoreValve® systems (Medtronic)"; that the product showed "significantly fewer cases of disabling stroke and moderate or greater paravalvular leak versus the CoreValve system--a self-expanding valve"; and that "a Medicare budget impact analysis

demonstrated the mechanically-expanded LOTUS valve is a less costly alternative to self-expanding valves at one year post procedure in high-risk patients with aortic stenosis."

23. On February 5, 2020, Boston Scientific issued a press release announcing its results for the fourth quarter and full year of 2019, stating, in relevant part, that the Company "[r]eceived Japanese Pharmaceuticals and Medical Devices Agency (PMDA) approval and positive reimbursement in Japan for the LOTUS Edge™ Aortic Valve System, a minimally invasive [TAVR] technology for patients with severe aortic stenosis."

24. On February 25, 2020, Boston Scientific filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). The 2019 10-K reported net sales from the Company's Interventional Cardiology subsegment, which includes the LOTUS Edge Aortic Valve System, stating, in relevant part, that "net sales of Interventional Cardiology products of $2.816 billion represented 26 percent of [the Company's] consolidated net sales in 2019," which "increased $226 million, or 8.7 percent, in 2019, as compared to 2018," and that "[t]his year-over-year increase was primarily related to growth in [the Company's] structural heart therapies including [*inter alia*] . . . [its] TAVR products including [its] . . . LOTUS™ Edge Valve."

25. Discussing Boston Scientific's market for the LOTUS Edge Aortic Valve System, the 2019 10-K stated, in relevant part, that "[s]tructural heart therapies are one of the fastest growing areas of the medical technology market and are highly synergistic with [the Company's] Interventional Cardiology . . . business[]," including the "LOTUS Edge™ Aortic Valve System, which is based on mechanical-expanding architecture"; and that "the LOTUS Edge™ Valve with mechanical-expanding architecture . . . is well suited for intra-annular cases and was launched commercially in the U.S. and Europe in the first half of 2019."

26. Appended as exhibits to the 2019 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that "the [2019 10-K] fully complies with the requirements of Section 13 (a) or 15 (d) of the" Exchange Act, and that "the information contained in the [2019 10-K] fairly presents, in all material respects, the financial condition and results of operations of Boston Scientific."

27. On July 29, 2020, Boston Scientific issued a press release announcing its results for the second quarter of 2020, touting, in relevant part, that the Company "[p]resented positive findings from the largest reported clinical experience to date with the LOTUS Edge™ Aortic Valve System at TVT [Transcatheter Valve Therapy] Connect," and that "[d]ata from a pre-specified interim analysis of the first 50 patients enrolled in the European RESPOND EDGE post-market registry demonstrated" numerous purported benefits, including "no reports of mortality, no repeat procedures for valve-related dysfunction or re-hospitalization for valve-related symptoms and excellent valve hemodynamics, the lowest PVL rates in this valve category and a reduced permanent pacemaker implantation rate in line with competitive valves in real-world experience."

28. The statements referenced in ¶¶ 19-27 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the LOTUS Edge Aortic Valve System's product delivery system was dysfunctional and threatened the continued viability of the entire product line; (ii) as a result, the Company had materially overstated the continued commercial viability and profitability of the LOTUS Edge Aortic Valve System product line; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

29. On November 17, 2020, pre-market, Boston Scientific issued a press release announcing a global recall of all unused inventory of the LOTUS Edge Aortic Valve System, citing "complexities associated with the product delivery system." Specifically, that press release disclosed, in relevant part:

> Boston Scientific . . . has announced it has initiated a global, voluntary recall of all unused inventory of the LOTUS Edge™ Aortic Valve System due to complexities associated with the product delivery system. The voluntary recall is related solely to the delivery system, as the valve continues to achieve positive and clinically effective performance post-implant. [. . . .]
>
> Given the additional time and investment required to develop and reintroduce an enhanced delivery system, the company has chosen to retire the entire LOTUS product platform immediately. All related commercial, clinical, research & development and manufacturing activities will also cease.
>
> "While we have been pleased with the benefits the LOTUS Edge valve has provided to patients, we have been increasingly challenged by the intricacies of the delivery system required to allow physicians to fully reposition and recapture the valve," said [Defendant] Mahoney, chairman and chief executive officer, Boston Scientific. "The complexity of the delivery system, manufacturing challenges, the continued need for further technical enhancements, and current market adoption rates led us to the difficult decision to stop investing in the Lotus Edge platform . . . ."
>
> This decision is expected to result in estimated total pre-tax GAAP charges of approximately $225 million to $300 million due to inventory, fixed asset, intangible asset and certain other exit charges and approximately $100 million to $150 million of these charges will impact the company's adjusted results. The vast majority of these charges will be recorded during the fourth quarter of 2020.

30. On this news, Boston Scientific's stock price fell $3.00 per share, or 7.89%, to close at $35.03 per share on November 17, 2020.

31. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

9

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

32. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Boston Scientific securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

33. The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Boston Scientific securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Boston Scientific or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

36. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Boston Scientific;

- whether the Individual Defendants caused Boston Scientific to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Boston Scientific securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

37. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

38. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Boston Scientific securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

11

- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Boston Scientific securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

39. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

40. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

41. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

42. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

43. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout

the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Boston Scientific securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Boston Scientific securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

44.  Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Boston Scientific securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Boston Scientific's finances and business prospects.

45.  By virtue of their positions at Boston Scientific, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

46.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Boston Scientific, the Individual Defendants had knowledge of the details of Boston Scientific's internal affairs.

47.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Boston Scientific.  As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Boston Scientific's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Boston Scientific securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Boston Scientific's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Boston Scientific securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

48.     During the Class Period, Boston Scientific securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Boston Scientific securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Boston Scientific securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Boston Scientific securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

49.	By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.	As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

51.	Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

52.	During the Class Period, the Individual Defendants participated in the operation and management of Boston Scientific, and conducted and participated, directly and indirectly, in the conduct of Boston Scientific's business affairs.  Because of their senior positions, they knew the adverse non-public information about Boston Scientific's misstatement of income and expenses and false financial statements.

53. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Boston Scientific's financial condition and results of operations, and to correct promptly any public statements issued by Boston Scientific which had become materially false or misleading.

54. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Boston Scientific disseminated in the marketplace during the Class Period concerning Boston Scientific's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Boston Scientific to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Boston Scientific within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Boston Scientific securities.

55. Each of the Individual Defendants, therefore, acted as a controlling person of Boston Scientific. By reason of their senior management positions and/or being directors of Boston Scientific, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Boston Scientific to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Boston Scientific and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

56. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Boston Scientific.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: December 4, 2020

Respectfully submitted,

POMERANTZ LLP

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

POMERANTZ LLP
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Attorneys for Plaintiff*

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

1. I, **Enrique Jevons**, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Boston Scientific Corporation ("Boston Scientific" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Boston Scientific securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Boston Scientific securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Boston Scientific securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed ___11/23/2020___
(Date)

_____
(Signature)

Enrique Jevons
(Type or Print Name)

**Boston Scientific Corporation (BSX)**                                            **Jevons, Enrique**

## List of Purchases and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 10/23/2020 | 2,717 | $37.0091 |