UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIANO ERRICHIELLO, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, MICHAEL F. MAHONEY, JOSEPH M. FITZGERALD, and DANIEL J. BRENNAN,<br><br>Defendants. | No.: 1:20-cv-12225-DPW |
| ENRIQUE JEVONS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BOSTON SCIENTIFIC CORPORATION, MICHAEL F. MAHONEY, and DANIEL J. BRENNAN,<br><br>Defendants. | No.: 1:21-cv-10033-DPW |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BANGALORE SATYANARAYANA FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS..............................................................................................................2

ARGUMENT ...................................................................................................................................6

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .............................................................................................................6

    B.    SATYANARAYANA SHOULD BE APPOINTED LEAD PLAINTIFF..............7

        1.    Satyanarayana is Willing to Serve as Class Representative ........................8

        2.    Satyanarayana Has the "Largest Financial Interest" ...................................8

        3.    Satyanarayana Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure.............................................................9

        4.    Satyanarayana Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses ................................12

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ................................................................................................................12

CONCLUSION ..............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.F.I.K. Holding SPRL v. Fass*,
   216 F.R.D. 567 (D. N.J. 2003) ...................................................................................................9

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................................11

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) .........................................................................................................10

*Bassin v. Decode Genetics, Inc.*,
   230 F.R.D. 313 (S.D.N.Y. 2005).................................................................................................7

*Beck v. Maximus, Inc.*,
   457 F.3d 291 (3d Cir. 2006) ...............................................................................................10, 11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
   252 F.R.D. 188 (S.D.N.Y. 2008).................................................................................................6

*Danis v. USN Communs., Inc.*,
   189 F.R.D. 391 (N.D. Ill. 1999) ...............................................................................................10

*Fischler v. Amsouth Bancorporation*,
   176 F.R.D. 583 (M.D. Fla. 1997) .............................................................................................10

*Gluck v. Cellstar Corp.*,
   976 F. Supp. 542 (N.D. Tex. 1997) ..........................................................................................10

*Greebel v. FTP Software*,
   939 F. Supp. 57 (D. Mass. 1996)..............................................................................................10

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
   2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004) ..............................................................9

*In re Comverse Tech., Inc., Sec. Litig.*,
   2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007).............................................................9

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
   2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009).......................................................6, 7

*In re Olsten Corp. Sec. Litig.*,
   3 F. Supp.2d 286 (E.D.N.Y. 1998) .......................................................................................9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................... 10

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ..................................................................................... 6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004) ...................................................................................... 9

*Janovici v. DVI, Inc.*, No. 03-4795,
    2003 U.S. Dist. LEXIS 22315 (E.D.Pa. Nov. 25, 2003) ................................................. 9

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) .......................................................................................... 6

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ................................................... 8

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ............................................................................................ 6

*Osher v. Guess ?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ............................................... 12

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ...................................................................................... 11

## Statutes

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................. *passim*

PSLRA .................................................................................................................................. *passim*

## Rules

Federal Rules of Civil Procedure Rule 23 ............................................................................ *passim*

Federal Rules of Civil Procedure Rule 42 ....................................................................... 1, 6, 10

Movant Bangalore Satyanarayana ("Satyanarayana") respectfully submits this Memorandum of Law in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order: (1) consolidating the above-captioned related actions[1]; (2) appointing Satyanarayana as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired the securities of Boston Scientific Corporation ("Boston Scientific" or the "Company") between April 24, 2019 and November 16, 2020, both dates inclusive (the "Class Period"); and (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and Andrews DeValerio LLP ("Andrews DeValerio") as Liaison Counsel for the Class.

**PRELIMINARY STATEMENT**

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Satyanarayana, with losses of approximately $200,746, has the largest financial interest in the relief sought in this action. *See* Declaration of Jeremy A. Lieberman in Support of Motion ("Lieberman Decl."), Ex. A. Satyanarayana further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as he is an adequate

---

[1] The above-captioned action *Jevons v. Boston Scientific Corporation et al*, No. 1:21-cv-10033 (the "Jevons Action") was initially filed in the United States District Court for the Eastern District of New York under style of *Jevons v. Boston Scientific Corporation et al*, No. 1:20-cv-05894 (E.D.N.Y.). On December 16, 2020, the above-captioned action *Errichiello v. Boston Scientific Corporation et al*, No. 1:20-cv-12225 (the "Errichiello Action") was filed in this Judicial District, alleging substantially the same wrongdoing against the same defendants. On January 7, 2021, the Jevons Action was transferred to this Court.

representative with claims typical of the other Class members. Accordingly, Satyanarayana respectfully submits that he should be appointed Lead Plaintiff.

## STATEMENT OF FACTS

As alleged in the Complaint in the Errichiello Action, Boston Scientific is a company known for manufacturing medical devices used in interventional medical specialties. According to the Company's annual report for the year ended December 31, 2019 filed with the SEC on Form 10-K on February 25, 2020 ("2019 10-K"), the Company purported to be in the business of marketing its LOTUS Edge, which is a transcatheter aortic valve replacement device (hereinafter "TAVR"). A TAVR is a medical device to treat patients with aortic valve stenosis, which occurs when the heart's aortic valve thickens and calcifies, preventing the valve from opening fully, which limits blood flow from the heart to the rest of the body. The FDA approved the LOTUS Edge in April 2019 for patients with severe aortic stenosis, and the Company launched sales during the quarter ended June 30, 2019.

Throughout the Class Period, Company executives stated that the LOTUS Edge was a source of revenue growth, that medical centers were using the device consistently, and the number of accounts/medical centers using the device was growing.

For example, on a July 29, 2020 earnings call with industry analysts and investors, Defendant Michael F. Mahoney, the Company's President and Chief Executive Officer ("Mahoney") stated that "LOTUS Edge continues to see strong utilization within existing accounts…" and that "the current centers are using the device quite consistently." Further, on that same earnings call, Defendant Mahoney stated "[s]o we are starting to see the gates open up a bit more in terms of new account openings with LOTUS…" Moreover, on an October 15, 2020 conference call with analysts and investors, Defendant Joseph M. Fitzgerald, Executive

2

Vice President, and President of Interventional Cardiology ("Fitzgerald") stated that "[t]his is now a ground game where we are expanding our footprint in the U.S. each month, we're growing actual procedures per center, per month."

However, unknown to investors, Defendants' representations were materially false and misleading because: 1) that the LOTUS Edge required additional product development work, an enhanced delivery system, reduced training and case support; 2) the Company was facing increases in both manufacturing complexity and the investment required for clinical scalability of the LOTUS Edge; and 3) as a result of material manufacturing and product delivery difficulties, the Company's commercial efforts to expand LOTUS Edge market share were unsustainable and failing.

Then, on November 17, 2020, before the market opened, Boston Scientific announced "it initiated a global, voluntary recall of all unused inventory of the LOTUS Edge Aortic Valve System due to complexities associated with the product delivery system." Further, the Company disclosed that "[g]iven the additional time and investment required to develop and reintroduce an enhanced delivery system, the company has chosen to retire the entire LOTUS product platform immediately. All related commercial, clinical, research and development and manufacturing activities will also cease."

Boston Scientific stated that its decision "is expected to result in estimated total pre-tax GAAP charges of approximately $225 million to $300 million due to inventory, fixed asset, intangible asset and certain other exit charges and approximately $100 million to $150 million of these charges will impact the company's adjusted results."

Also on November 17, 2020, on a special conference call to discuss the recall, Defendant Fitzgerald explained:

3

> [t]he complexity of the LOTUS Edge delivery system has resulted in the valve's current niche role in the market despite our commercial efforts. Given the additional product development work required to reintroduce an enhanced delivery system to the market and reduce the training and case support necessary to scale clinical use and ensure competitiveness, we've made the difficult decision to retire the entire LOTUS platform immediately… we've determined that it's not prudent to sustain the level of investment required for delivery system change and the increasing burden of training and case support requirements. In addition, we faced increases in both manufacturing complexity and the investments, including all commercial, clinical, R&D and manufacturing activities on the LOTUS product platform.

During this conference call, one analyst questioned the timing of the disclosure of the recall, and Fitzgerald responded:

> "So I think – I'll put it in perspective. So we just rounded the corner right around TCT of a 1-year anniversary of launching in the U.S. We're going through our annual operating plan process, an we're really challenging – we're trying to figure out what's our global number, what's our U.S. number. And we're -- we have done a really good job of training and retraining around the complexities of the delivery system. But we came to the conclusion that to scale this, to go from sub-100 accounts today in the United States to hundreds of accounts, right, we really were going to struggle in replicating that deep technical, clinical support as we scale cases and go 2, 3, 4, 5x without a design enhancement. So I think it was the proper thing for us to do to really be our own worst critics after the first full year of having Lotus Edge on the market and commercialized in the U.S. And it became very apparent that without a design enhancement, that our program wasn't scalable and that LOTUS would ultimately remain as a niche device in a pretty expensive space to operate."

On November 17, 2020, Boston Scientific shares declined from a closing price on November 16, 2020 of $38.03 per share, to close at $35.07 per share, a decline of $2.96 per share or approximately 8%, on heavier than usual volume.

Analysts were surprised by the Company's disclosure and noted that the Company's decision to recall the LOTUS Edge damaged management's credibility with investors and will result in the Company losing market share to competitors. For example, on November 17, 2020, Piper Sandler released an analyst report that stated that the Company's "announcement no doubt comes as a big surprise as LOTUS was once billed as a primary growth driver for BSX's

4

Interventional Cardiology business." BITG released an analyst report that stated "this decision comes just a month after BSX expressed confidence in its dual-valve TAVR strategy at the Transcatheter Cardiovascular Therapeutics medical meeting . . . .", and Raymond James issued a report stating that "[t]he discontinuation of LOTUS is a credibility ding to management, which will weigh on the stock."

Also on November 17, 2020, Canaccord Genuity released an analyst report that stated "Long term impacts – US TAVR gap until 2024: The immediate consequence of this decision is that Boston [Scientific] will no longer have a TAVR platform in the US until 2024E." Also on November 17, 2020, Cowen and Company released aa report that stated that "the discontinuation of Lotus creates a near-term hole in BSX's U.S. TAVR initiatives."

During the Class Period, Defendant Mahoney sold 259,207 shares of BSX stock at artificially inflated prices for proceeds of over $9 million, Defendant Fitzgerald sold 207,911 shares of BSX stock at artificially inflated prices for proceeds of over $8.9 million and Defendant Daniel J. Brennan ("Brennan"), the Company's Executive Vice President and Chief Financial Officer, sold 40,925 shares of BSX stock at artificially inflated prices for proceeds of over $1.6 million.

As of the time of the filing of the Complaint in the Errichiello Action, Boston Scientific's shares had not recovered, closing at $34.67 per share on December 15, 2020.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market valve of the Company's common stock, Plaintiff and other Class members have suffered significant losses and damages.

# ARGUMENT

### A. THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay.
> Fed. R. Civ. P. 42(a). *See also* Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws. Accordingly, the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false

6

and misleading statements and omissions that artificially inflated the price of Boston Scientific's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133, at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.     SATYANARAYANA SHOULD BE APPOINTED LEAD PLAINTIFF

Satyanarayana should be appointed Lead Plaintiff because he has the largest financial interest in the Action and otherwise meet the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

7

    (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Satyanarayana satisfies all three of these criteria and thus is entitled to the presumption that he is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1. Satyanarayana is Willing to Serve as Class Representative

On December 4, 2020, Pomerantz, counsel for plaintiff in the Jevons Action, caused a notice to be published over *PRNewswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Boston Scientific securities that they had until February 2, 2021 to file a motion to be appointed as Lead Plaintiff. *See* Lieberman Decl. Ex. B.

Satyanarayana has filed the instant motion pursuant to the Notice, and has attached a Certification attesting that he is willing to serve as representative for the Class, and provide testimony at deposition and trial, if necessary. *See* Lieberman Decl., Ex. C. Accordingly, Satyanarayana satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. Satyanarayana Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, Satyanarayana believes that he has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares

purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[2] The most critical among the Lax Factors is the approximate loss suffered. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at *39 (E.D.Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D. N.J. 2003).

Satyanarayana (1) purchased 30,000 shares of Boston Scientific securities during the Class Period; (2) expended $1,254,328 on his purchases of Boston Scientific securities; (3) retained all of his Boston Scientific shares at the end of the Class Period; and (4) as a result of the disclosures of the fraud, suffered a loss of $200,746. *See* Lieberman Decl., Ex. A. Because Satyanarayana possesses the largest financial interest in the outcome of this litigation, he may be presumed to be the "most adequate" plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Satyanarayana Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the

---

[2] *See also In re Olsten Corp. Sec. Litig.*, 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998). *Accord In re Comverse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

9

> representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999). In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of Satyanarayana are typical of those of the Class. Satyanarayana alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Boston Scientific, or omitted to state material facts necessary to make the statements they did make not

10

misleading. Satyanarayana, as did all members of the Class, purchased Boston Scientific securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*, 457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

Satyanarayana is an adequate representative for the Class. There is no antagonism between the interests of Satyanarayana and those of the Class, and his losses demonstrates that he has a sufficient interest in the outcome of this litigation. Moreover, Satyanarayana has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

Further demonstrating his adequacy, Satyanarayana has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* Lieberman Decl., Ex. D.

### 4. Satyanarayana Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses

The presumption in favor of appointing Satyanarayana as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of Satyanarayana to fairly and adequately represent the Class has been discussed above. Satyanarayana is not aware of any unique defenses defendants could raise that would render him inadequate to represent the Class. Accordingly, Satyanarayana should be appointed Lead Plaintiff for the Class.

### C. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001). The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Satyanarayana has selected Pomerantz as Lead Counsel and Andrews DeValerio as Liaison Counsel for the Class. These firms are highly experienced in the area of securities litigation and class actions, and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' respective resumes. *See* Lieberman Decl., Exs. E-F. Pomerantz recently secured a recovery of $3 billion on behalf

of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. *See* Lieberman Decl., Ex. E. Likewise, Satyanarayana's selection of Liaison Counsel, Andrews DeValerio, has experience in achieving substantial recoveries in class actions, and its attorneys have extensive familiarity with the Local Civil Rules of this Judicial District. *See* Lieberman Decl., Ex. F.

As a result of the firms' extensive experience in litigation involving issues similar to those raised in the Related Actions, Satyanarayana's counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and expeditiously. Thus, the Court may be assured that by approving the selection of Lead and Liaison Counsel by Satyanarayana, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Satyanarayana respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Satyanarayana as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel and Andrews DeValerio as Liaison Counsel for the Class.

Dated: February 2, 2021

Respectfully submitted,

/s/Daryl Andrews
Daryl Andrews (BBO #658523)
Glen DeValerio (BBO #122010)
**ANDREWS DEVALERIO LLP**
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
daryl@andrewsdevalerio.com
glen@andrewsdevalerio.com

*Counsel for Movant and Proposed Liaison*

*Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

*Counsel for Movant and*
*Proposed Lead Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on February 2, 2021.

*/s/ Daryl Andrews*
Daryl Andrews